UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NEIL EMERY and
RYAN BURGDORF,

                Plaintiffs,        Civil Action No. 15-11113
                                            Honorable Sean F. Cox
v.                                          Magistrate Judge David R. Grand

JOSEPH R. BURTCH, D.O.,

                Defendant.
_____/

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO STRIKE DEFENDANTS' EXPERTS AND THEIR REPORTS [61] AND DENYING AS MOOT DEFENDANT'S MOTION TO PRECLUDE PLAINTIFFS FROM OFFERING OR ELICITING TESTIMONY FROM RICHARD B. STAPLETON, J.D. [49]**

      This is a prisoner civil rights action brought pursuant to 42 U.S.C. § 1983.[1] At all relevant times, Plaintiffs Neil Emery ("Emery") and Ryan Burgdorf ("Burgdorf") (collectively "Plaintiffs") were incarcerated at the Central Michigan Correctional Facility in St. Louis, Michigan ("STF"). (Doc. #12-1 at ¶¶ 1-2). The sole defendant is Joseph Burtch, D.O. ("Burtch"), who, as a physician for a private medical contractor, treated Plaintiffs during their incarceration at STF. (*Id.* at ¶¶ 3, 6, 25).

    **A.**    **The Pending Motions**

      On January 25, 2017, Burtch filed a Motion to Preclude Plaintiffs from Offering or Eliciting Testimony from Richard B. Stapleton, J.D. (Doc. #49). Plaintiffs filed a response in opposition to this motion on February 14, 2017 (Doc. #56); Burtch filed a reply on February 22, 2017 (Doc. #58); and Plaintiffs filed a sur-reply on March 1, 2017 (Doc. #59). The Court held

---

[1] An Order of Reference was entered on July 1, 2015, referring all pretrial matters to the undersigned pursuant to 28 U.S.C. § 636(b). (Doc. #6).

oral argument on this motion on March 8, 2017.

Subsequently, on March 13, 2017, Plaintiffs filed a Motion to Strike Defendant's Experts and Their Reports.[2] (Doc. #61). Burtch filed a response in opposition to this motion on March 27, 2017 (Doc. #65), and Plaintiffs filed a reply on April 12, 2017 (Doc. #67). The Court held oral argument on this motion on May 10, 2017.[3]

### B. Plaintiffs' Allegations

At issue in this case are Plaintiffs' allegations that Burtch sexually assaulted them while providing medical care, in violation of the Eighth Amendment. More specifically, Emery alleges that during a February 5, 2014 examination of his ear, Burtch "leaned into Emery's knees so that [Burtch's] penis was on Emery's kneecaps, and applied pressure so that Emery could feel his penis against his leg." (Doc. #12-1 at ¶¶ 6-8). Emery further alleges that, during this incident, he "looked down at his knee area and could see [Burtch] moving his hips back and forth and could see the outline of an erect penis," and that he "could feel [Burtch's] erected penis pressed against his leg." (*Id.* at ¶¶ 10-11). Similarly, Burgdorf alleges that, on several occasions between October 2013 and January 2014, during the course of medical examinations, Burtch "placed his penis on Burgdorf's [] leg and rubbed it around," became "aroused during that rubbing," and then "rubbed his finger on Burgdorf's lips in a sexually suggestive manner." (*Id.* at ¶¶ 26-28).

---

[2] While a motion "to strike" may only be directed at pleadings, the Court interprets Plaintiffs' request as one to exclude the evidence that might otherwise be admissible at summary judgment or trial. *See Cleveland Clinic Healthy Systems-East Region v. Innovative Placements, Inc.*, No. 11-2074, 2012 U.S. Dist. LEXIS 74438, *2-3 (N.D. Ohio May 30, 2012) (citing Fed. R. Civ. P. 56, 2010 Advisory Committee Notes holding that an objection to admissibility prior to trial is similar to one lodged at trial, and there is no need to make a separate motion to strike).

[3] That same day, the Court also heard oral argument on Burtch's Motion for Summary Judgment. (Doc. #63). The Court will issue a separate Report and Recommendation as to that motion.

**C.      Analysis**

In their motion to strike Burtch's experts, Plaintiffs assert that there is "no basis for experts to testify in this matter" because the sole issue before the Court "is whether [Burtch] rubbed his groin area against the kneecaps of the Plaintiffs, which resulted in arousals by [Burtch]."  (Doc. #61 at 1-2).  According to Plaintiffs, "the statements contained in the reports of [Burtch's] experts will not assist the jury in resolving the issue in this Case."  (*Id.* at 2).  Thus, Plaintiffs ask the Court to strike the reports (and preclude the testimony) of Burtch's three expert witnesses:  Thomas G. Graves, M.D., Randall R. Stoltz, M.D., and Gerald A. Shiener, M.D. (Doc. #61).

     1.      *The Applicable Legal Standard*

Fed. R. Evid. 702, which governs the testimony of expert witnesses, provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

The proponent of expert testimony must establish all the foundational elements of admissibility by a preponderance of the evidence.  *See Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244, 251 (6th Cir. 2001).  Moreover, an expert witness "may not testify to a legal conclusion."  *Hyland v. HomeServices of Am., Inc.,* 771 F.3d 310, 322 (6th Cir. 2014) (citing *Berry v. City of Detroit,* 25 F.3d 1342, 1353 (6th Cir.1994)).  Along these lines, courts have recognized that expert testimony that "attempts to tell the jury what result to reach and which runs the risk of interfering with a district court's jury instructions, hardly can be viewed as being helpful to the jury."  *Woods v. Lecureux,* 110 F.3d 1215, 1221 (6th Cir. 1997) (citing Fed. R.

Evid. 702). Thus, exclusion of such testimony may be appropriate "on the ground that it would not be helpful to the trier of fact." *Id.* at 1220.

    2.  *Dr. Graves and Dr. Stoltz*[4]

Plaintiffs first seek to exclude the reports and testimony of Dr. Graves, a board-certified family physician, and Dr. Stoltz, the Medical Director for Vanderburgh County (Indiana) Corrections. Both Dr. Graves and Dr. Stoltz provide opinions that essentially can be divided into two categories. (Docs. #61-2, 61-3). First, both physicians opine as to the proper way to conduct eye, ear, or nose exams. For example, Dr. Graves explains:

> There is no "universal standard" for carrying out eye, ear, or nose exams. Inadvertently touching a patient does not fall below any applicable standard of care for eye, ear, or nose exams. In fact the very nature of these exams require a certain amount of inadvertent touching to properly evaluate the patient.
>
> Additionally, part of my medical practice involves giving educational instruction to medical residents and students of Wayne State University's School of Medicine. As a clinical assistant professor, I teach my students to bring themselves very close to the patient when conducting eye, ear, nose, and other exams. Being in very close proximity to the patient is the only way to properly carry out these types of exams.

(Doc. #61-2 at 1-2). Similarly, Dr. Stoltz opines "as to how a physician properly examines a patient," saying, in relevant part:

---

[4] Plaintiffs also seek to exclude the report and testimony of Dr. Shiener, a psychiatrist who was retained to rebut the opinion of Plaintiffs' damages expert, Barry Mintzes, Ph.D. (Doc. #61-4). Certain portions of Dr. Shiener's report clearly stray into impermissible territory; for example, Dr. Shiener opines that "it is more compelling to conclude that Mr. Emery and Mr. Burgdorf are more motivated by the prospect of secondary gain in the pursuit of litigation than they are by the effects of trauma." (*Id.* at 7). Regardless, however, where Dr. Shiener was identified as an expert witness for the sole purpose of rebutting the opinion of Dr. Mintzes, and where Plaintiffs have "conceded that no experts are needed in this case" (Doc. #67 at 3, n. 7) – and, thus, have agreed not to present Dr. Mintzes' testimony to the jury – there is no need for the Court to further parse Dr. Shiener's opinion, as his testimony is unnecessary and will be excluded.

> I dispute … that there is a "universal standard" for how a physician carries out an eye, ear, or nose exam. A physician must do the necessary exam however possible, but with utmost respect for the patient. A large overweight patient typically cannot put his or her knees together. Women typically put their knees together when sitting on an exam table; but men typically do not. The physical size of the patient and/or the physician can have an impact on the best position to do the exam as well. Additionally, the size and shape of the exam room the positioning of furniture, and other factors also impact the best position to perform eye, ear, and nose exams. There is not a "universal standard" for how a physician should position his [sic] or herself relative to a patient when conducting these types of exams.
>
> Additionally, it is possible for a doctor to inadvertently touch a patient while conducting these and other types of exams. Inadvertent contact is sometimes unavoidable depending on the factors I stated previously (size and shape of the patient, size and shape of the room, etc.) and does not fall below any "standard of care."

(Doc. #61-3 at 5).

Plaintiffs do not contest the doctors' qualifications. Rather, they argue that the issue "of how medical examinations are undertaken so that the doctor does not rub his groin against the kneecaps of prisoners to become aroused is not an area where expert testimony is needed." (Doc. #61 at 3). The Court disagrees with this characterization of the issue. In this case, Burtch asserts that he examined both Emery and Burtch in a proper manner and that, at most, he may have inadvertently rubbed against their legs. Thus, where part of Burtch's defense is that his manner of conducting the examinations at issue was objectively reasonable, expert testimony as to the professional standards for performing eye, ear, and nose examinations – in particular with respect to the appropriate positioning for the doctor, and the potential for inadvertent touching to occur – would assist the trier of fact in determining whether to credit Burtch's testimony, and whether he acted appropriately in examining Plaintiffs. Accordingly, Dr. Graves and Dr. Stoltz may opine on those topics at trial.

In other respects, however, both Dr. Graves and Dr. Stoltz offer opinions that far exceed the bounds of appropriate expert testimony. For example, both of these physicians opine not

5

only as to the proper methodology for conducting eye, ear, and nose exams, but as to what *actually* took place during the examinations at issue in this case, and the constitutionality of Burtch's conduct. For example, Dr. Graves opines:

> In my opinion, Dr. Burtch provided appropriate medical care to both Emery and Burgdorf during each and every encounter.
>
> Dr. Burtch did not engage in any unconstitutional conduct.
>
> The examinations performed by Dr. Burtch, and the manner in which he performed those examinations, are supported by the medical evidence.
>
> \* \* \*
>
> Dr. Burtch properly evaluated and treated both Emery and Burgdorf's ongoing complaints, signs and symptoms in a competent and appropriate manner.

(Doc. #61-2 at 1, 2). Similarly, Dr. Stoltz indicates in his report that he is providing his expert opinion as to "whether Dr. Burtch's care was constitutionally and medically appropriate, and if he engaged in any inappropriate conduct as the plaintiffs claim." (Doc. #61-3 at 2). Elsewhere in his report, Dr. Stoltz opines, *inter alia*:

> Based on my education, training, and extensive experience working in correctional medicine as well as doing many physical examinations in the jail setting and elsewhere, Dr. Burtch performed both medically and constitutionally appropriate examinations…. In my expert opinion, if this occurred in my jail and a male physician engaged in this type of conduct, any male inmate would yell out and likely curse or strike at the physician rather than just sitting there. Additionally, in my experience and in my expert opinion, a victimized inmate would not wait 8 days to report this kind of alleged conduct.
>
> \* \* \*
>
> In my expert opinion, the alleged conduct did not occur.
>
> \* \*
>
> It is also my opinion that Dr. Burtch provided care that was constitutionally and medically appropriate.

(*Id.* at 4, 5).

6

These aspects of both Dr. Graves' and Dr. Stoltz's opinions are not proper expert opinion testimony and may not be presented to the jury. Indeed, as set forth above, expert opinions on a question of law are not admissible. *See Berry*, 25 F.3d at 1353-54. Moreover, expert testimony that amounts to a legal opinion or a legal conclusion is similarly inadmissible. *See Jones v. Pramstaller*, 874 F. Supp. 2d 713, 720-21 (W.D. Mich. 2012) ("The principle that an expert may not make legal conclusions is indeed well established.") (citing cases).

Here, then, neither Dr. Graves nor Dr. Stoltz will be permitted to offer expert testimony similar to the opinions set forth above (such as that "Dr. Burtch did not engage in any unconstitutional conduct," "Dr. Burtch provided care that was constitutionally and medically appropriate," "the alleged conduct did not occur," etc.). Thus, to the extent Plaintiffs seek to strike these aspects of Burtch's expert reports, and to preclude testimony to this effect, their motion will be granted.[5]

---

[5] As set forth above, Burtch has also filed a motion seeking to preclude Plaintiffs from offering or eliciting testimony from Richard Stapleton. (Doc. #49). In his motion, Burtch primarily asserts that Stapleton's testimony should not be allowed because, as a rebuttal expert, his opinions are not properly limited to the same subject matter of the expert testimony he seeks to rebut, as required by Fed. R. Civ. P. 26(a)(2)(D)(ii). (*Id.* at 18-21). Specifically, Burtch argues that because Stapleton is a *legal* expert, his opinions necessarily "do not address the same subject matter as Defendant's experts' purported *medical* opinions, and he does not have the qualifications necessary to even offer an opinion on the relevant subject matter." (*Id.* at 19 (emphasis added)). Plaintiffs disagree, asserting that Stapleton's opinion properly seeks to rebut Dr. Stoltz's *statement* that "if this occurred in my jail and a male physician engaged in this type of alleged conduct, any male inmate would yell out and likely curse or strike at the physician rather than just sitting there" and "would not wait 8 days to report this kind of alleged conduct." (Doc. #61-3 at 4). Regardless, however, Plaintiffs concede in their response to Defendant's motion that Stapleton's report "is unnecessary if Defendant's expert[s] do not make such broad conclusions regarding how inmates respond to sexual abuse in prison." (Doc. #56 at 6-7). Counsel for Plaintiffs also indicated at oral argument that if the objectionable portions of Dr. Stoltz's and Dr. Shiener's reports are stricken (and testimony is not allowed on these subjects), they have no need for – and will not offer – the opinion of Stapleton. With this representation, and because the Court is disallowing the objectionable portions of Burtch's experts' reports, Defendant's Motion to Preclude Plaintiffs from Offering or Eliciting Testimony from Richard Stapleton (**Doc. #49**) is **DENIED AS MOOT**.

7

### D. Conclusion

For the reasons set forth above, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiffs' Motion to Strike Defendant's Experts and Their Reports [**61**]. Dr. Stoltz and/or Dr. Graves shall be permitted to offer expert opinion testimony only to the extent it is consistent with this Order. In all other respects, the expert reports and opinion testimony of Drs. Shiener, Stoltz, and Graves shall be precluded. Additionally, the Court **DENIES AS MOOT** Defendant's Motion to Preclude Plaintiffs from Offering or Eliciting Testimony from Richard B. Stapleton, J.D. [**49**].

**IT IS SO ORDERED.**

Dated: July 7, 2017  
Ann Arbor, Michigan

s/David R. Grand  
DAVID R. GRAND  
United States Magistrate Judge

### NOTICE TO PARTIES REGARDING OBJECTIONS

The parties' attention is drawn to Fed. R. Civ. P. 72(a), which provides a period of fourteen (14) days from the date of receipt of a copy of this order within which to file objections for consideration by the district judge under 28 U.S. C. §636(b)(1).

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 7, 2017.

s/Eddrey O. Butts  
EDDREY O. BUTTS  
Case Manager